UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RYAN ELMORE, *et al.*,

        Plaintiffs,              Case No. 2:22-cv-1665
                                                Judge Sarah D. Morrison
    v.                                  Magistrate Judge Elizabeth
                                                Preston Deavers
APEKS LLC,

        Defendant.

## OPINION AND ORDER

Defendant Apeks LLC sold the Plaintiffs a machine to extract cannabinoids from raw botanical material for medical use. Plaintiffs claim that the machine never worked as Apeks represented and that Apeks fraudulently induced them into purchasing the machine.

This matter is before the Court on Defendant's Motion to Dismiss. (ECF No. 22.) For the reasons set forth below, the Motion is **DENIED**.

**I. BACKGROUND**

The following draws from the allegations in the Complaint, which are considered as true for purposes of the pending motion. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Plaintiffs Ryan Elmore and Warren Blesofsky are, together, the majority owners of Plaintiff LB Atlantis, LLC, which is a California-licensed medical cannabis business located in Long Beach, California. (Am. Compl., ECF No. 17, ¶ 8.)

Several years ago, Elmore and Blesofsky began researching the purchase of equipment to extract cannabinoids from raw botanical material. (*Id.* at ¶ 9.) In

doing so, they learned of Apeks, a manufacturer of botanical oil extraction machines. (*Id.*) Blesofsky then met with an Apeks sales representative, Scott Sondles, to discuss the purchase of two oil processing/extraction machines for $115,000 each—collectively, the machines would process 21 pounds of raw plant material when operating for 19.5 hours per day. (*Id.* at ¶ 11.)

Soon after their initial meeting, Sondles told Blesofsky that Apeks would be introducing a new machine that would "conservatively" process 60 to 80 pounds of raw material per day. (*Id.* at ¶ 12.) He then sent Blesofsky a sales brochure describing Apeks's new "High Production Series" machine. (*Id.* at ¶ 13.) The brochure included a "return on investment and pricing" guide, which represented that the machine would process nearly 60 pounds of raw material per day when operating for 23 hours per day with a 90% cannabinoid extraction rate. (*Id.*) The cost of this new machine was $315,000. (*Id.*)

Based on the statements made by Sondles and representations in the sales brochure, Elmore and Blesofsky decided to buy a High Production Series machine for use by Atlantis. (*Id.* at ¶ 16.)

On or about August 2, 2018, Elmore executed an "Order Form/Quote" ("Agreement") with Apeks to purchase the machine for $357,761.25 (including shipping).[1] (*Id.* at ¶ 17; Agreement, ECF No. 22, PAGEID # 145–61.) The machine was delivered to Plaintiffs on or about October 18, 2018. (Am. Compl., at ¶ 19.)

---

[1] A copy of the Agreement is not attached to the Amended Complaint, but it is referenced therein. Accordingly, the Court can consider the Agreement when ruling on the instant motion. *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001)

Unfortunately, the machine experienced technical problems "from the first day of operation." (*Id.* at ¶ 20.) Among other problems, the machine never processed more than 23 pounds per day and "never approached" a 90% cannabinoid extraction rate. (*Id.* at ¶ 21.)

Plaintiffs "repeatedly and timely" informed Apeks that the machine was not working as promised and sought Apeks's technical assistance to get the machine to work to no avail. (*Id.* at ¶¶ 23, 24.) Finally, in late August 2019, Elmore spoke to Andy Joseph (Apeks President), who told Elmore that Plaintiffs could return the machine for a full refund and Apeks would sell them a different machine at a lower cost. (*Id.* at ¶ 25.) Apeks then reneged, saying that Plaintiffs could return the machine at a reduced "trade-in" or "depreciated" value, and that Plaintiffs would be given only "store credit" towards a new machine. (*Id.* at ¶ 26.) Plaintiffs retained the machine.

In a continued effort to get the machine to work, Plaintiffs ordered replacement valves as suggested by Apeks (who promised to refund Plaintiffs if the valves did not work). (*Id.* at ¶¶ 27, 28.) When the replacement valves did not work, Apeks refused to refund the cost of the valves. (*Id.* at ¶ 28.) Then, in June 2020, Apeks remotely installed software updates to the machine, which made it "even less functional." (*Id.* at ¶ 29.)

Plaintiffs stopped using the machine in July 2020 and filed this action in March 2022. They filed their Amended Complaint on June 21, 2022, bringing claims

---

("If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.") (citation omitted).

for fraudulent inducement/fraudulent misrepresentation (Count 1), breach of an oral agreement (Count 2), violations of the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code § 4165.01, (Count 3), and violations of the Latham Act, 15 U.S.C. § 1125 (Count 4). Apeks now moves to dismiss all claims.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. ANALYSIS

### A. Contractual Limitation for Filing Suit

Apeks seeks dismissal of all claims based on a limitation in the Agreement, which states that "no action, regardless of form, arising out of or in connection with this Agreement may be brought by either party more than one year after the cause of action has accrued." (Agreement, § 11(f)). Plaintiffs argue in response that the one-year contractual limitation does not apply for several reasons, including that their fraudulent inducement claim, if successful, voids the terms of the Agreement. Because the Court agrees with Plaintiffs that a successful fraudulent inducement claim forecloses Apeks's arguments based on the terms of the Agreement, it need not address Plaintiffs' other arguments.

Fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract.[2] *Aero Fulfillment Services Corp. v. Oracle Corp.*, 186 F.Supp.3d 764, 774 (S.D. Ohio 2016) (applying Ohio law) (Black, J.). "A claim for fraudulent inducement arises when a party is induced to enter into

---

[2]In a diversity action or where the Court has supplemental jurisdiction over state law claims, the forum state's choice-of-law rules determine which state's substantive law will apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Where, as here, "'neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (Rice, C.J.) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)). Ohio law applies.

5

an agreement through fraud or misrepresentation." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502–03 (1998) (citation omitted). "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the [agreement] or other wrongful conduct induced a party to enter into the [agreement]." *Id.* at 503.

To prove fraudulent inducement, a plaintiff must demonstrate: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another into relying on it; (5) justifiable reliance; and (6) a resulting injury. *See Micrel, Inc. v. TRW, Inc.*, 496 F.3d 866, 874 (6th Cir. 2007) (citing *Lepera v. Fuson,* 83 Ohio App.3d 17, 23 (1992)).

Plaintiffs sufficiently allege that Apeks fraudulently induced them into purchasing the machine based on conduct that occurred prior to contract formation. Accepting the factual allegations as true, Apeks represented that its High Production Series machine would process approximately 60 pounds of raw plant material per day at a 90% extraction rate. (Am. Compl., ¶¶ 12, 13.) These representations were material, and Plaintiffs relied on them in deciding to purchase the machine. (*Id.* at ¶¶ 16–17, 33–34, 37.) Apeks's representations were false and made with the intent to induce Plaintiffs into relying on them to purchase the machine. (*Id.* at ¶¶ 35–36.) Plaintiffs were injured as a result. (*Id.* at ¶ 38.)

The remedy that Plaintiffs seek for their fraudulent inducement claim is rescission of the Agreement. (*Id.* at ¶ 41.) Under Ohio law, a party who has been

6

fraudulently induced to enter into a contract may elect among two possible remedies: the party may either rescind the contract or retain what he has obtained pursuant to the contract and bring an action to recover damages for his injuries. *Jeffrey Mining Prod. L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708, 716 (2001). "A contract which is rescinded is ineffective *ab initio* and no rights may be predicated upon that contract." *May v. State Farm Ins. Co.*, No. 90AP-1407, 1991 WL 81925, at *2 (Ohio Ct. App. May 14, 1991) (citing *Schuster Elec. Co. v. Hamilton Cty. Stores, Inc.*, 61 Ohio App. 331, 335 (1939)). Thus, if Plaintiffs are successful on their fraudulent inducement claim, the Agreement will be rescinded and the one-year limitation on actions therein is not enforceable.

In an effort to avoid this result, Apeks points to the integration clause in the Agreement. (Agreement, § 11(i)). However, even when a contract has an integration clause, a party may bring a claim for fraudulent inducement when the contract does not "directly contradict the allegedly fraudulent representation.*" P.J. Lindy & Co., Inc. v. Savage*, No. E-18-028, 2019 WL 994149, at *4 (Ohio Ct. App. Mar. 1, 2019). Here, the Agreement does not contain any language contradicting or even addressing the allegedly fraudulent representations regarding the processing and extraction rates. Accordingly, the integration clause does not foreclose Plaintiffs' fraudulent inducement claim.

Apeks's Motion to Dismiss based on the contractual limitation for bringing suit is **DENIED**.

B.     **ODTPA Statute of Limitations**

Apeks separately argues that Plaintiffs' ODTPA claim is subject to a one-year statute of limitation. (Mot., PAGEID # 141.) Plaintiffs disagree, arguing that it is a four-year statute of limitation that applies to their ODTPA claim. (Resp., PAGEID # 198–200.) Apeks did not respond to Plaintiffs' arguments in its Reply.

Plaintiffs' ODTPA claims are grounded in fraud. Accordingly, the four-year statute of limitation in Ohio Rev. Code § 2305.09 applies. *See Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St. 3d 79, 81–82 (1982) ("The ground of the action and nature of the demand determine which statute of limitation is applicable."); *Plumbing & Pipefitting Local 219 Pension Fund v. Buck Consultants*, LLC, No. 4:07CV1609, 2007 WL 4287870, at *4 (N.D. Ohio 2007) (finding ODTPA claim barred by four-year statute of limitations).

Apeks's Motion to Dismiss Plaintiffs' ODTPA claim is **DENIED.**

IV.    **CONCLUSION**

For the reasons set forth above, Apeks's Motion to Dismiss (ECF No. 22) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE**

8